# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION

**CIVIL ACTION NO: 4:04cv-00051-M**

**BENJAMIN D. RIGGS, et al.**                                                    **PLAINTIFFS**

**V.**

**AMERICAN BANKERS INSURANCE**                                      **DEFENDANT**
**COMPANY OF FLORIDA**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion for summary judgment [DN 14] by Defendant, American Bankers Insurance Company of Florida.  Fully briefed, this matter stands ripe for decision.  For the reasons set forth below, the motion by the Defendant for summary judgment is **GRANTED**.

## I.  STANDARD OF REVIEW

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories, and affidavits, establish that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial.  Anderson v.

Liberty Lobby, Inc. 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986). Rule 56 requires the non-moving party to present "*specific facts* showing there is a *genuine* issue for trial." Fed. R. Civ. P. 56(e) (emphasis added). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. It is against this standard that the Court reviews the following facts.

## II.  FACTS

The Plaintiffs, Benjamin and Lucy "Gerri" Riggs, owned a chicken farm in Nebo, Hopkins County, Kentucky. The farm was owned and operated by the Plaintiffs as Ben & Gerri's Eggs, Inc. Defendant, American Bankers Insurance Company of Florida (American Bankers), a subsidiary of Assurant Solutions, issued an insurance policy for the farm, No. FO 0138 915, to the Plaintiffs. Plaintiffs received coverage from the Defendants beginning in June 1998. At issue here is the policy renewal beginning June 26, 2001 and running until June 26, 2002. The policy provided coverage to Farm Buildings and Structures with a limit of $1,000,000 and Scheduled Farm Personal Property Coverage with a limit of $49,000.

Gerri Riggs was Secretary/Treasurer of Ben and Gerri's Eggs and handled all

insurance matters for the corporation. County Wide Insurance Agency (County Wide) of Dexter, Missouri was the agent for the policy issued by American Bankers. Riggs primarily communicated with Sharon McCord of County Wide about insurance matters. John Hancock Mutual Life Insurance was the farm's mortgagee.

On April 28, 2002, a tornado destroyed buildings and personal property on Plaintiffs' farm. All business records, except those on computer, were lost. Gerri Riggs contacted County Wide by telephone on April 29, 2002, to report the loss. Plaintiffs were then contacted by County Wide and told that their policy had been cancelled on April 5, 2002, due to non-payment of premium in the amount of $1,751.25.

Plaintiffs contend that they never received the notice of cancellation for non-payment of premium. Gerri Riggs checked her computer records after being told the policy had been cancelled and found that she had not in fact paid the premium. She testified that she relied on County Wide to tell her when a premium was due, either by fax or phone call, and did not keep track of a payment schedule for the premiums.

Beginning in June of 1999, Plaintiffs elected to pay their premium by the direct bill method of payment. By this method, the insured pays one-third of the premium to their agent on the renewal date of their policy and then pays the balance in three equal installments, which are due 60, 120, and 180 days following the renewal. The bills for the premium payments are computer generated by American Bankers and are always sent to the insured's last known address. The bills are sent approximately thirty days before the premium is due. If the premium goes unpaid, a second notice is generated by the

computer. If the premium remains unpaid, the computer makes the decision to cancel the policy for non-payment of premium and automatically generates a notice of pending cancellation that is then mailed to the insured at their last known address.

During the time in question, all of Defendant's direct billing was conducted from its office in Scottsdale, Arizona. There, Mercede Carroz was the direct billing clerk and handled the billing for Plaintiffs during the period in question. However, in January of 2003 Defendant began conducting direct billing out of its office in Omaha, Nebraska. All of the records from Scottsdale were shipped to Omaha. Christina Valesquez is the current direct billing clerk for American Bankers with access to the records pertaining to Plaintiffs.

Plaintiffs' first installment payment was due August 25, 2001. The second was due October 24, 2001. The August payment was not made on time, and Defendant's computer records indicate that five notices were sent to Plaintiffs. The fifth notice would have been a notice of pending cancellation. However, on October 23, 2002, Defendant received payment for both the August and October installments and Plaintiff's coverage was not cancelled. Defendant's computer records indicate that for the third and final installment payment due December 23, 2001, three notices were sent to Plaintiffs. Two notices were billing notices and the third was a notice of pending cancellation.

The December installment was never paid. Defendant's records show that on March 17, 2002, a notice of pending cancellation for non-payment of premium was sent by mail to Plaintiffs, informing them that cancellation would be effective at 12:01 on

4

April 5, 2002.  American Bankers sent the notice to Plaintiffs' farm at 590 Yarbrough Hill Road, Nebo, Kentucky, 42441.  However, all mail addressed to the farm was actually always delivered to Plaintiffs' home at 246 Key Cemetery Road, Nebo, Kentucky, 42441.

Each time Defendant sent a notice of pending cancellation due to non-payment of premium, a copy of the notice was also sent to the insured's agent and mortgagee, if applicable.  John Hancock did receive their copy of the notice sent to Plaintiffs from American Bankers on March 25, 2002.  County Wide also received a copy of this notice.

On March 25, 2002, Sharon McCord of County Wide sent a fax to the Plaintiffs, advising them of the notice of pending cancellation.  Plaintiffs claim to have never received this fax.  Gerri Riggs testified that the fax number on the fax was actually the incorrect number, and that she had advised McCord of this on a previous occasion.  McCord stated that it was not County Wide's policy to record whether faxes it sent were received, and that she had no record of calling Plaintiffs to see if they received the fax.

In addition, John Hancock sent a letter to Plaintiffs dated March 27, advising them that they had received notice of cancellation due to non-payment of premium.  This letter was sent to Plaintiffs' home address. Gerri Riggs claims she never received this.

Plaintiffs filed this breach of contract action against the Defendant, alleging Defendant breached its contractual obligation to pay for the damages caused to Plaintiffs' property by the April 28, 2002 tornado.  Plaintiffs seek to recover damages for the loss of farm buildings and structures and farm personal policy, as covered by their policy.  Defendant filed a counterclaim against Plaintiffs, seeking a determination that the

insurance policy was properly cancelled due to non-payment of premium twenty-three days before the loss occurred. Defendant has moved for summary judgment on Plaintiffs' claim.

## II.  DISCUSSION

The determination of this motion turns on whether Defendant has clearly established that it met the requirements of Kentucky law, and Defendant's own policy requirements regarding notice of cancellation and proof of mailing of the notice, despite Plaintiffs' claim that they never received the notice.

Under Kentucky law, for insurance policy cancellations of the type under consideration here, the insurer must deliver or mail notice of the cancellation to the insured at the insured's last known address. KRS 304.20-320(2). The notice must "state the effective date of the cancellation," and must "be accompanied by a written explanation of the specific reason or reasons for the cancellation." Id. The notice of cancellation must "be mailed or delivered by the insurer to the named insured at least fourteen (14) days prior to the effective date of the cancellation if the cancellation is for nonpayment of premium." Id. In addition, "proof of mailing of notice of cancellation or of reasons for cancellation to the named insured at the address shown in the policy shall be sufficient proof of notice." Id.

In compliance with this statute, the policy issued to Plaintiffs by American Bankers provides for procedures in the event of cancellation or non-renewal under the section entitled Mandatory Amendatory Endorsement, Poultry Buildings Program,

Kentucky. For all policies in effect for more than sixty days or for renewals of policies, American Bankers promises to mail or deliver a written notice of cancellation to the insured at least fourteen days before the date of cancellation, if cancellation is for non-payment of premium. Id. The policy also states that proof of mailing will be sufficient proof of notice. Id.

Thus, for Defendant to prevail, it is not necessary to determine that Plaintiffs in fact received the notice of pending cancellation due to non-payment of premium from Defendant. Instead, it is enough to conclusively establish that Defendant has proof of mailing the notice of cancellation, as this will establish sufficient proof of notice.

What constitutes proof of mailing was established in Goodin v. Gen. Accident Fire and Life Assurance Corp., 450 S.W.2d 252 (Ky. 1970). "Proof of mailing may be satisfied by showing compliance with business usage." Id. at 257. However, the business usage "must embody sufficient evidentiary safeguards to satisfy the need for protection of the affected party in the particular transaction concerned." Id. In Goodin, safeguards must include (1) a postal receipt, (2) a record certification, (3) a return address on the envelope, and (4) sending the cancellation by first class mail. Id. These were deemed sufficient evidentiary safeguards. Id.

American Bankers has submitted evidence of its usual and customary business practices as related to mailing notices of cancellation. The Defendant's mainframe computer, located in Omaha, Nebraska, ran a search every Sunday for notices of pending cancellation to be sent. The list that the computer generated was sent to Defendant's

main headquarters in Miami, Florida, where the notices were broken out depending on product line. All notices for agricultural insurance were then sent to the Scottsdale, Arizona office, where Mercede Carroz, the direct billing clerk for the agricultural line, would receive a computer printout containing all of the notices to be sent, along with actual copies of the notices of pending cancellation. This computer printout served as Defendant's record of proof of mailing. Carroz would generate her own computer printout for the notices that were to be sent to the mortgagees of each insured, if applicable. This served the same function as the computer printout for the insureds.

     Carroz would clearly indicate on the printout which notices did not need to be sent out, either because payment had been made, there was a claim pending, or if the policy was not in fact for the agricultural line. The notices that were to be sent out were sent straight through by Carroz to the insured, the insured's agent, and to the insured's mortgagee, if any. Carroz put each notice into a window envelope with American Banker's return address clearly marked.

     Carroz then sent the notices, in their envelopes, along with the computer printout, to the Scottsdale mailroom. According to Craig Pittenridge, current Scottsdale mailroom supervisor, the mailroom would then use the postage meter to establish the proper first class postage for the envelopes, print the postage, and attached it to each envelope. Then, the total number of envelopes were counted. In March of 2002, the United States Postal Service charged $.25 per envelope to verify that the names and addresses on the computer printout were the same as the names and addresses on each envelope. The mailroom

would set the postage meter for the number of envelopes, at $.25 per envelope, print that postage, and affix it to the computer printout.

Defendant employed the delivery service P.S.I. to take the envelopes, along with the computer printout, from the mailroom to the United States Post Office. There, the Post Office would check the names and addresses against the computer printout, confirm the proper postage, accept the envelopes for mailing, and place their postmark on the computer printout to serve as proof of mailing.

P.S.I. would then return the computer printout to the mailroom and the mailroom would return the printout to Carroz. Once Carroz received the printout, she would stamp it as received and place it in her personal file. Since the functions of the Scottsdale office were moved to Omaha, Nebraska in January of 2003, the direct billing clerk there, Christina Valesquez, has current possession of the computer printout containing the record of Plaintiffs' notice.

The foregoing discussion establishes the business usage that Defendant employed for its proof of mailing technique. Simply establishing the business usage is not enough, however. The Court must also determine that the usage embodies "sufficient evidentiary safeguards to satisfy the need for protection of the affected party in the particular transaction concerned." Goodin, 450 S.W.2d at 257. In Goodin, the business usage for insurance cancellation required a postal receipt, a record certification, a return address on the envelope, and sending the cancellation by first class mail. Id. These were deemed sufficient evidentiary safeguards by the Goodin court. Id.

The Defendant used all of the same techniques as the defendant in <u>Goodin</u> as part of its business usage. American Bankers even went a step farther, in paying for the U.S. Postal Service to verify that each name on the computer printout corresponded with each envelope sent out. Since the court in <u>Goodin</u> deemed the defendant's business usage to provide sufficient evidentiary safeguards, it follows that the Defendant's business usage, if complied with in the circumstance at hand, should have provided sufficient evidentiary safeguards to satisfy the need for protection of the affected party.

Thus, an examination of the computer printout showing that Plaintiffs were sent a notice of pending cancellation will establish if the Defendant complied with business usage and satisfied the proof of notice required by KRS 304.20-320(2) and the policy issued to the Plaintiffs by the Defendant.

The copy of the printout, entered into the record as Exhibit 1 to the deposition of Christina Valesquez, states that it was printed on March 17, 2002. The printout contains twenty-seven items in total, and Item Number 5 lists the policy number, name, and address of Plaintiffs. The address listed for them is their farm address, 590 Yarbrough Hill Road, Nebo, Kentucky, 42441. Gerri Riggs testified that all mail sent to the Yarbrough Hill Road address was actually delivered by the postal carrier in Nebo to her home address, 246 Key Cemetery Road, Nebo, Kentucky, 42441, and that there had never been a problem with this system.

Other items on the printout are marked through, indicating that Carroz did not sent notices out to those insureds, or they are initialed with an MS, meaning Melissa Saunders,

who was Carroz's supervisor.  If after checking the computer records Carroz found that an insured had a claim pending, Carroz would give the notice to Saunders, initial it on the printout, and not send out the cancellation notice.  There are no marks of any kind on Item No. 5, indicating that Carroz sent a notice of cancellation to Plaintiffs.

The first page of the printout contains the postage meter printout produced by the mailroom, in the amount of $4.50, dated March 19, 2002.  At $.25 per envelope in March of 2002, this indicates that eighteen envelopes were sent out.  Nine items on the printout are either marked out completely or have a notation made by Carroz next to them.  As Item No. 5 has no marking, this indicates that it was one of the eighteen.

The first page of the printout also contains the postmark of the U.S. Postal Service, dated March 19, 2002.  This indicates that P.S.I. delivered the envelopes and printout to the Post Office, where it was all verified, and eighteen envelopes were accepted and sent out by the Post Office.  The received stamp that Carroz would place on the printouts when she received them back from the mailroom is also on the first page.  It is dated March 21, 2002.

All of this clearly indicates that on March 19, 2002, Defendant sent a notice of pending cancellation due to non-payment of premium to Plaintiffs at their Yarbrough Hill address, which was the address on their policy.  This notice should have been delivered to Plaintiffs' home address by the local postal carrier, as was their custom.  However, whether the notice was actually delivered is not the issue.

Plaintiffs argue that the affidavit of Craig Pittenridge, the current mailroom

11

supervisor in Scottsdale, is not sufficient to establish the mailing practices of American Bankers in March 2002 because Pittenridge did not work in the mailroom at that time. Plaintiffs contend that Pittenridge's affidavit is not based on personal knowledge and thus has no evidentiary value. Fed. R. Civ. P. 56(e) requires that "supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." An affidavit based only on information or belief will not suffice.

Pittenridge testified to practices that he is familiar with and that have not changed since March of 2002. He did not testify to information he had been given by another source or on his belief of the procedures. As supervisor, he has first hand personal knowledge of the mailroom practices. His review of the computer printouts, weighed against his knowledge of the practices, led to his conclusion that the practices were properly followed. Pittenridge's testimony, in addition to the fact that John Hancock received its copy of the notice of pending cancellation on March 25, 2002, and County Wide also had notice of the pending cancellation, leads to the conclusion that the Plaintiffs' notice of cancellation was properly mailed.

Decision on this motion turns on whether the Defendant has met the statutory and policy requirements regarding notice of cancellation and proof of mailing of the notice, despite the Plaintiffs' claim that they never received the notice. The evidence shows that the Defendant complied in every way with its business usage and it has produced

substantial proof of mailing the notice of cancellation.

Defendants raise additional arguments based on the notice itself. First, they argue that the cancellation is not effective because American Bankers did not provide them with unequivocal notice of pending cancellation. On March 29, 2002, Ben Riggs signed for and received a notice of non-renewal from American Bankers, mailed March 15, 2002. The notice of non-renewal informed the Plaintiffs that their coverage would expire on June 26, 2002, and would not be renewed. Plaintiffs claim that the notice of non-renewal served to modify or supercede the notice of cancellation.

Plaintiffs cite <u>Partin v. United States Automobile Association</u>, 379 S.W.2d 741 (Ky. App. 1964) in support of this argument. However, the equivocation in <u>Partin</u> turned on the holding that notice of cancellation must contain a clear and definite date of cancellation. <u>Partin</u>, 379 S.W.2d at 741. Here, the notice of cancellation clearly informed the Plaintiffs that their coverage would be cancelled as of April 5, 2002, if they did not pay the premium. The Defendant also followed each step of its own policy requirements. Further, there is no authority for the Plaintiff's proposition that sending both a notice of non-renewal and a notice of pending cancellation makes the notice of cancellation equivocal and ineffective.

Second, Plaintiffs argue that the principles underlying the doctrine of reasonable expectations should apply to the issues they raise. Under this doctrine, an insured is entitled to all the coverage that he may reasonably expect to be provided according to the terms of his insurance policy. <u>Ky. Ass'n of Counties All Lines Fund Trust v.</u>

McClendon, 157 S.W.3d 626, 634 (Ky. 2005).  While the Plaintiffs admit that the doctrine does not apply here, they seek to apply it by analogy and argue that since the notice of non-renewal was sent via certified mail, it was reasonable for them to believe that it took precedence over the notice of cancellation sent by first-class mail and that they would have coverage until June 26, 2002.  This argument must fail.  The two notices are not in conflict or inconsistent with one another and should not have caused confusion.  More importantly, the Plaintiffs cannot argue that they were confused by notices from the Defendant while adamantly denying they ever received the notice of cancellation.

After a review of the record, the Court concludes that the Defendant met the statutory and policy requirements regarding notice of cancellation and established sufficient proof of mailing said notice.  As no genuine issues of material fact exist, the Defendant is entitled to summary judgment on its counterclaim that the insurance was properly cancelled due to non-payment of premiums.

## IV.  CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the Defendant's motion for summary judgment is [DN 14] is **GRANTED**.

cc: counsel of record